

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

LARRY D. CHRISTMAS, JR.,                                              PLAINTIFF

VS.                                                     CAUSE NO. 3:15cv932HTW-LRA

DG FOODS, LLC,                                                        DEFENDANT

## COMPLAINT
## (JURY TRIAL DEMANDED)

**COMES NOW,** Plaintiff, Larry D. Christmas, Jr., and files this his Complaint against the Defendant, DG Foods, LLC, and for grounds would show unto the court the following to wit:

### JURISDICTION AND VENUE

1. This retaliation and race discrimination lawsuit is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000 et seq., § 704(a) Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866 and 42 U.S.C. § 1981 and 29 U.S.C. § 2001 et seq. Jurisdiction of the Court is invoked pursuant to 42 U.S.C. § 2000E-5(f), 28 U.S.C. § 1343(a)(3) & (4) and 28 U.S.C. § 1331.

2. Venue is proper pursuant to U.S.C.§ 1391(b) since the unlawful hiring and

employment practices were committed in the Northern Division of the Southern District of Mississippi and that is where the hiring records relevant to the unlawful conduct are maintained and administered.

## PARTIES

3. Plaintiff, Larry D. Christmas, Jr., is an adult African American male citizen of the State of Mississippi, Southern District of Mississippi, Northern Division.

4. DG Foods, LLC may be served with process of this Court by serving a copy of the Summons and Complaint upon its registered agent William Bryant, 1095 Industrial Drive, Hazlehurst, MS 39083.

## STATEMENT OF FACTS

5. Plaintiff, Larry D. Christmas, Jr., an African American male, was hired at DG Foods, LLC on July 21, 2014, as a Maintenance Technician. On July 24, 2014, Christmas reported for first day of work on the 1st shift and assumed his duties and responsibilities in the Maintenance Department. On approximately the 12th day of August, DG Foods hired a white male named Christopher Baldwin in the Maintenance Department. Christmas was told that he was no longer needed on the 1st shift and that he could report to work Wednesday, on the 2nd shift.

6. Christmas comes to show that when DG Foods hired a white male, Christmas was forced to move to 2nd shift without notice as Christmas was told

prior to clocking out for the 1st shift that he was to report the following evening at 2:00 for the 2nd shift. This was a change in scheduling and tasks to be performed and actually equates to adverse employment action. At this point, many of Christmas's job duties, assignments, and functions, were altered. This was all as a result of the hire of a white employee into the maintenance department. In addition, Christmas holds that whites are employed at higher rates than blacks and comes to show both discriminatory hiring and pay rate practices.

7. On August, 22, 2014, Christmas was denied the opportunity to pick up his paycheck; however, a white male was allowed to pick up said paycheck in the same department under the same supervision. Christmas was told that he would have to wait until a later time to receive his pay. This discriminatory activity had been going on for several weeks prior.

8. On September 3, 2014, Christmas received a verbal warning for an incident that occurred on Sunday, August 31, 2014, which was a day that Christmas was not working. ISSUE: On Sunday, August 24, 2014, three (3) maintenance workers were observed on a lift. None of the workers had on harnesses. Of the three (3), the 2 black employees were written-up and suspended for 4 days without pay. On the contrary, the white employee involved was neither written-up nor suspended for the reason because of reasons stated that he had not been trained for fall

protection. The white maintenance employee had been employed by the company in that capacity considerably longer than the other two black employees. This clearly depicts preferential treatment to the white maintenance employees over the blacks.

9. How does this apply to Christmas? Christmas is also a black maintenance employee. When Christmas was written-up for an incident that occurred on the day that Christmas was not even scheduled for or in attendance at work, he was discriminated against. This is in-fact harassment when a person is written-up for something that one was never involved with or affiliated with. Christmas can also show that a white maintenance employee was given preferential treatment and privileges over Christmas, a black maintenance employee. Christmas holds that he was written-up for an incident that he had no involvement while a white maintenance employee was not disciplined when caught violating safety protocol.

10. Christmas also acknowledges that a white maintenance employee was spared disciplinary action when receiving an oral warning for an alleged act that Christmas was neither in attendance to commit nor was trained for. Such disciplinary action is an adverse employment against Christmas. Christmas has been clearly prejudiced by such different approaches to disciplinary action involving blacks and whites. This is nevertheless racial- discrimination.

11. On October 22, 2014, Christmas had completed his 90 day probationary period and had spoken with Human Resources representative during the week of October 27, 2014, and the week of November 3, 2014, in regards to his agreed pay increase and enlistment of company benefits. Christmas presented a letter from HR dated the 21st of July, 2014, explaining concerns and reasons for not initially taking the job. This letter was after HR Manager called Christmas on Friday, July 18, 2014, and informed Christmas that they were not ready to give Christmas the rate of ($14- $16/hr) that Christmas had been referred by MDES. Christmas had previously received referral from MDES, applied for Maintenance Technician position and interviewed with HR Manager, Joey Allen and Maintenance Manager, Jimmy Allgood. Christmas was informed that the funds were not in the budget to spend at that time to pay $14-$16 and that he would be eligible to receive said rate after his probationary period.

12. Christmas had also spoke with the Plant Manager on Sunday, November 2, 2014, and it was at that point that the PM was notified by Christmas of the 90 day probationary period. Christmas also questioned his raise and benefits and Christmas informed him of his education and background. The PM stated that all changes should be effective November 1, 2014, and instructed Christmas to keep an eye on his upcoming pay stub for those changes. When Christmas arrived to

work on Monday, November 3, 2014, Christmas stopped by HR to again inquire of the changes. The PM asked the HR Manager about Christmas's education. The HR Manager, at that time, confirmed that Christmas had earned both a bachelor and a masters degree. The PM then jokingly replied that, "He has more education than I do" as he was walking out of the office. Christmas was told to prove himself prior to being compensated and whites were brought in with such compensation at higher rates.

13. On November 4, 2014, Christmas's supervisor, Tim Hanna was out of control. Christmas was harassed by his supervisor, wrongfully terminated, and management personnel created a hostile working environment. The supervisor has illustrated history of harassment, inappropriate behaviors, and misconduct (many .;complaints) and DG Foods had been aware of Hanna's behaviors but did nothing to prevent further actions. DG is liable for supervisor's conduct.

14. The supervisor refused to provide PPE in retaliation for employee addressing harassment, inappropriate touch, and improper conduct. As a result, Christmas was harmed. Christmas was exposed to contaminants and denied equipment necessary to perform duties which would have been provided to Christmas prior to his voicing of concerns and complaints made.

15. On November 9, 2014, 2 white males were hired into DG Foods

Maintenance Department at rates of $14/hr and $16/hr. Christmas shows this as being racially motivated as there is no documented experience or education record which would justify two white male employees being hired in at rates exceeding that of Christmas's. Again, this is both racial and wage discrimination.

16. Due to hostile working environment and continually developing matters involving retaliation, Christmas provided letter of resignation in January of 2015. Upon giving such notice, Christmas was immediately summoned and prematurely terminated prior to his effective date of resignation. This is wrongful termination and Christmas was again prejudiced as his hours and OT was cut short when management decided to fire Christmas after receiving notice. Christmas worked 10- 12 hours per night and paid for 8. This is in-fact adverse employment action.

17. In February of 2015, Christmas received a 'Notice of Monetary Benefit Determination' from the Mississippi Department of Employment Security. Said notice was in-fact an amended report of the wages that Christmas earned from DG Foods. It showed values of zero(0) in all base periods. Said activity caused adverse reactions which prejudiced Christmas's claim. The data reported to MDES was false and misleading. Christmas is inclined to believe that said acts are in-fact retaliation to Christmas engaging in protected activity against DG Foods which is covered by EEOC. While employed, Christmas had been deprived of pay

**WHEREFORE PREMISES CONSIDERED,** Plaintiff Larry D. Christmas, Jr., demands judgment of and from the Defendant in the amount of $2,500,000.00, together with Court costs, and interest on the judgment at the legal rate from and after the date of judgment.

**RESPECTFULLY SUBMITTED** this, the 21st day of December, 2015.

*Larry D. Christmas, Jr.*
Larry D. Christmas, Jr.
121 Autumn St.
Hazlehurst, MS 39083
(504) 261-6590
larrychristmas@live.com

14